WARNER, Judge.
This is an appeal from an order awarding $750 to appellee in guardian fees and $7,500 in attorney’s fees to the appellee’s attorney for a guardianship which lasted three days. We reverse.
The appellee filed a petition for appointment of herself as an emergency temporary guardian on September 15, 1992, alleging that the ward’s relatives were not looking out for his best interests and that the ward was incompetent. Letters of Guardianship were issued the same day. Only three days later, the ward’s sister filed a petition for injunction/restraining order to prevent appellee from exercising any guardianship powers. This ex parte temporary injunction was granted the same day (by the same judge who had issued the letters), and a hearing was set. It was then cancelled and reset.
Six days later, the ward was flown to Chicago, his home town, where he died on September 29, 1992. One would have thought that this was the end of the guardianship proceedings. Unfortunately, it appears to be only the beginning. Although the temporary injunction specifically prevented appellee from obtaining any of the assets of the ward or exercising any of the powers *82 granted her as temporary guardian of the person and property of the ward, she and her attorney nevertheless set depositions and sent notices for production of assets of the ward, which we would conclude were actions connected with the acquisition of control over the ward’s assets by appellee, acts which were specifically prohibited by the temporary injunction. She also moved to hold the ward’s relatives in contempt for moving the ward to Chicago, even though at the time the ward left there was no order preventing his travel, and appellee was enjoined from acting as guardian of the person. Therefore, we conclude that, except for the services directly related to the filing of the emergency petition itself, appellee and her attorney are not entitled to fees for exercising powers prohibited by the court order.
It appears that the court was of the opinion that the ward’s relatives were not acting in his best interests and were attempting to circumvent the Florida court when they took the ward to Chicago. The award of the fee was premised on appellee’s good faith in initiating the proceedings and as a lesson for future individuals who may wish to interfere with guardianship proceedings that such action may be costly, even though the court acknowledged that what had occurred in this case was “economically unsound.”[1] Indeed, the effort in this case was performed when the order of the trial court appointing appel-lee as guardian was suspended and was “of no force and effect pending further [sic] of this court”.[2] Although the work is now justified by the guardian as necessary to terminate the guardianship, her attorney admitted that no property of the ward ever came into her hands. Therefore, there was nothing to account for.
In sum, the record does not support the conclusion that any of these services except for the initial institution of the guardianship proceedings were performed under authority of the court order. Although section 744.108, Florida Statutes (1992) entitles the attorney and guardian to a reasonable fee, such a fee would not include fees for services that ap-pellee was enjoined from providing. As such, the court erred in awarding fees in the amount it did to the guardian and her attorney and establishing them as a priority of the estate of the ward.
We remand to set a fee for the work performed for securing the emergency guardianship proceeding and the few days during which the guardian was permitted to exercise powers.
GLICKSTEIN, J., concurs.
FARMER, J., dissents without opinion.

. While we do not disagree with the concern of the trial judge that there should be some mechanism to deter interlopers in guardianship proceedings, perhaps the best way to avoid what occurred here is to require adherence to the statutory procedure for appointment of emergency guardians which includes the requirement that the court shall appoint counsel to represent the alleged incapacitated person in the summary proceeding to appoint the emergency guardian. § 744.3031(1), Fla.Stat.

. We note in the record that an order freezing accounts of the ward was also entered ex parte, which order was obtained by appellee under no apparent authority after the death of the ward. These post death ex parte efforts never should have occurred and should not generate compensation either to the guardian or her attorney.